**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

CITIBANK (SOUTH DAKOTA) N.A.,
N.A., et al.,

             Plaintiffs,

vs.                                               Case No. 3:04-cv-1076-J-32MCR

NATIONAL ARBITRATION COUNCIL,
INC.; et al.,

             Defendants.
_____ /

CHASE MANHATTAN BANK
USA, N.A.,
             Plaintiff,

vs.                                               Case No. 3:04-cv-1205-J-20MCR

NATIONAL ARBITRATION COUNCIL,
INC.; et al.,

             Defendants.
_____ /

## ORDER

      This case is before the Court on Plaintiffs, Citibank (South Dakota), N.A. and

Citibank USA, National Association's ("Citibank"), and Chase Manhattan Bank USA,

N.A.'s ("Chase"), Motions for Summary Judgment (Docs. 70 & 71), and the National

Arbitration Council, Inc. ("NAC"), and Charles S. Morgan's ("Morgan") Motion to

Dismiss (Doc. 73).[1]  Chase and Citibank seek a permanent injunction, declaratory

_____

    [1]  On September 19, 2005, the Court consolidated these two cases (Doc. 64; Chase Doc. 60).  The filings following that date have been filed in the <u>Citibank</u> case

relief and money damages.  The undersigned issued a preliminary injunction in both cases.  (Doc. 45; Chase Doc. 45).  NAC and Morgan responded to the motions for summary judgment.  (Doc. 78).  Chase and Citibank responded to the motion to dismiss.  (Docs. 76 & 77).

## I.    BACKGROUND

NAC is an "arbitration service" with Morgan serving as its sole proprietor and arbitrator.  Citibank and Chase, for present purposes, are credit card companies.  In 2002 and 2003, Citibank and Chase began receiving letters from their respective cardholders stating that the credit card companies agreed to arbitrate disputes under the rules of NAC.  (Doc. 2, Barnette Aff. at ¶ 6; Chase Doc. 41-2, Szlezak Aff. at ¶¶ 17-18).[2] These letters contained language similar to that of the following "Demand for Arbitration":

> Notwithstanding any other agreements which may be in conflict with these terms, be advised that I have a pending dispute with your organization as indicated by my previous correspondences.  For valuable consideration given, you agree to resolve this dispute with me in binding arbitration subject to the rules and procedures for the arbitration service listed herein:
> National Arbitration Council, Inc.
> PO Box 234
> O'Brien, Florida 32071-0234
> ....

only.  Unless otherwise noted, all docket entries referenced in this Order are located in the Citibank docket (Case no. 3:04-cv-1076-J-32MCR).

[2]    The Exhibits to the Szlezak affidavit comprise Doc. 40 in the Chase case.  The actual Szlezak affidavit is Doc. 41 in the Chase case.

(Doc. 2, Barnette Aff., Ex. 10; Chase Doc. 40-13, Ex. L).   Until the preliminary injunction was entered, NAC issued over 278 arbitration "awards" on behalf of Citibank cardholders and over 262 "awards" on behalf of Chase cardholders.  (Doc. 2, Barnette Aff. at ¶ 18; Chase Doc. 41-2, Szlezak Aff. at ¶ 22).  These "demands" and subsequent "award" letters were not in accord with Citibank or Chase's cardholder agreements.   The cardholder agreements, most of which include arbitration provisions, provide that either party may elect mandatory binding arbitration.  (Doc. 2, Barnette Aff. at ¶ 7; Chase Doc. 41-2, Szlezak Aff. at ¶ 9).  The party requesting arbitration had the choice of three nationally recognized arbitration firms to resolve the dispute: American Arbitration Association ("AAA"), JAMS, or National Arbitration Forum ("NAF").  NAC is not listed as one of the recognized arbitration firms in either Chase or Citibank's cardholder agreement.

In response to the arbitration demands involving NAC, Chase began providing notices to their customers and to NAC, informing them that NAC had no jurisdiction to hear the arbitrations.  (Chase Doc. 41-2, Szlezak Aff. at ¶ 19).  Chase notified both parties that any "awards" would be null and void because they were not issued by an authorized arbitration firm.  (Id.).  On April 11, 2003, Bank One, Delaware, N.A. ("Bank

One")[3], predecessor to Chase, sent a letter to NAC which stated in relevant part:

> We recently received documents from [NAC] in which [they propose] to enter an Award against [Bank One].  Bank One never agreed to submit disputes with its Cardmembers to your organization.  Consequently, your organization has no jurisdiction in this matter.
>
> Accordingly, you are directed to cease asserting that Bank One has agreed to submit matters to your entity or that your entity has any authority in this matter....

(Doc. 40-17, Ex. P).

On October 24, 2002, Citibank also sent a letter to NAC in response to arbitration demands involving NAC, stating:

> **Formal Notice That Citibank (South Dakota) And Its Affiliates Do Not Agree To Arbitrate Disputes Under The Rules Of The National Arbitration Council, Inc.**
>
> This letter is written on behalf of Citibank (South Dakota), N.A. and its current and former affiliates....
> The Bank has received letters from various cardmembers stating that the Bank has agreed to arbitrate the cardmembers' disputes under the rules of the National Arbitration Council....
> The Bank has adopted an arbitration program for its cardmembers.  The agreements governing our customers' accounts identify three arbitration firms that cardmembers may select to arbitrate disputes .... NAC is not one of those firms....
> This letter is formal notice to your organization,

---

[3]   Chase is the successor entity to the October 1, 2004 merger between Chase Manhattan Bank USA, N.A. and Bank One, Delaware, N.A.

4

> administrators, committee members, and/or agents that the
> Bank has not agreed, and will not agree, to arbitrate any
> disputes before the NAC.   Therefore, you are formally
> advised that any such letters or demands for arbitration
> received by the NAC involving the Bank must be rejected
> immediately....

(Doc. 2, Barnette Aff., Ex. 2).[4]  Morgan testified at his deposition that he received this

letter.  (Doc. 30-6, Morgan Dep. at pp. 143-144).  Morgan also testified that he had

a copy of the Citibank arbitration agreement and knew that NAC was not listed as an

acceptable arbitration firm.  (Id. at p. 57).  Additionally, Morgan testified that he had

never seen any agreement executed by Citibank that allowed NAC to arbitrate claims

involving Citibank.  (Id. at p. 129).  Nevertheless, NAC and Morgan continued to issue

"awards", and all of the NAC "awards" are signed by Morgan.  (Id. at pp. 41-42, 44).

Moreover, Citibank and Chase never participated in any arbitration conducted

by NAC or Morgan.[5]  In addition, of each "award" issued by NAC concerning Citibank

and Chase, the Banks have lost every single one.  (Id. at p. 51).  These "awards" are

---

[4]   On May 15, 2003, Citibank sent another certified letter to NAC and Morgan
along with an affidavit which stated that Citibank's cardholder agreement does not
provide for arbitration with NAC or any firm other than the three firms specifically set
forth in that agreement.  (Id., Ex. 13).

[5]   There are apparently no actual proceedings in NAC arbitrations, no witnesses
called, or the like.  (Doc. 30-6, Morgan Dep. at p. 84).  All of NAC's arbitration awards
are entered based solely on a review of papers provided by the cardholder.  (Id. at pp.
120-121).

always in the exact amount requested by the claimant cardholder plus NAC's fee (usually $170) (Id. at p. 230), and declare that Citibank and Chase owe the claimant cardholder for the amount of the claim. (Doc. 31, Attach. 1-7). Each "award" against Citibank and Chase is accompanied by a letter from NAC informing them that the "award" is "final and binding" against Citibank and Chase, and that the "time for appeal has expired." (Id.).

## II.   DISCUSSION

### A.   Governing Legal Standards

#### 1.   Summary Judgment

Summary judgment is proper where "there is no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "The moving party bears the initial responsibility of informing the...court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Hickson Corp. v. Northern Crossarm Co., Inc., 357 F.3d 1256, 1260 (11th Cir. 2003) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)) (internal quotations omitted). An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the nonmovant. Anderson v. Liberty Lobby, Inc., 477

U.S. 242, 249-250 (1986).  In determining whether summary judgment is appropriate, a court must draw inferences from the evidence in the light most favorable to the nonmovant and resolve all reasonable doubts in that party's favor.  <u>Centurion Air Cargo, Inc. v. United Parcel Serv. Co.</u>, 420 F.3d 1146, 1149 (11th Cir. 2005).

## 2. <u>Tortious Interference with Contractual Relationships</u>

To establish a claim for tortious interference with a contractual or business relationship, a plaintiff must prove: (1) the existence of a contractual or business relationship; (2) defendant's knowledge of the relationship; (3) defendant's intentional and unjustified interference with the relationship and (4) damage to the plaintiff as a result of the interference.  <u>KMS Restaurant Corp. v. Wendy's Int'l, Inc.</u>, 361 F.3d 1321, 1325 (11th Cir. 2004) (citing <u>Seminole Tribe v. Times Pub. Co.</u>, 780 So. 2d 310, 315 (Fla. 4th DCA 2001).

## 3. <u>Florida's Deceptive and Unfair Trade Practices Act</u>

The purpose of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), is "[t]o protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce."  Fla. Stat. § 501.202(2) (2006).  FDUTPA declares unlawful "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade

or commerce." Fla. Stat. § 501.204.  Citibank and Chase both have standing to seek

relief under FDUTPA.  Fla. Stat. § 501.211(1) & (2); Guyana Telephone & Telegraph

Co., Ltd., 329 F.3d 1241, 1246-47 (11th Cir. 2003) (noting legislative changes in

FDUTPA expanding pool of potential plaintiff's from "consumers" to "persons").

To establish a claim under FDUTPA, the plaintiff must prove the defendant's

conduct was: (1) unfair and deceptive and (2) the complaining party was aggrieved

by the alleged act.  State of Florida, Office of Atty. Gen., Dept. of Legal Affairs v.

Tenet Healthcare Corp., 420 F. Supp. 2d 1288, 1309 (S.D. Fla. 2005) (citing Haun v.

Don Mealy Imps., 285 F. Supp. 2d 1297, 1308 (M.D. Fla. 2003)).  Since FDUTPA

does not clearly define what constitutes "unfair and deceptive," courts have held that

"the statute should be construed liberally," and that the concept should be regarded

as "extremely broad."  MJS Music Publications, LLC v. Hal Leonard Corp., 2006 WL

1208015, *2 (M.D. Fla.) (unpublished opinion) (internal quotations and citations

omitted).  In a FDUTPA action, a plaintiff need not establish that the defendant's

conduct violated a specific regulation, rather only that it "offends established public

policy or is immoral, unethical, oppressive, unscrupulous or substantially injurious."

Betts v. Advance Am., 213 F.R.D. 466, 482 (M.D. Fla. 2003) (citing Urling v. Helms

Exterminators, Inc., 468 So. 2d 451, 453 (Fla. 1st DCA 1985)).

### 4.      Permanent Injunctive Relief

To obtain a permanent injunction, in addition to making the required showing

to obtain a temporary injunction, see Johnson & Johnson Vision Care, Inc. v. 1-800

Contacts, Inc., 299 F.3d 1242, 1246-47 (11th Cir. 2002), a party must prevail in

establishing the violation of the right asserted in the complaint.  Alabama v. U.S. Army

Corps of Engineers, 424 F.3d 1117, 1128 (11th Cir. 2005) (citations omitted).  Courts

recognize that if "there is no triable issue of fact, [a] court may convert a preliminary

injunction to a permanent injunction without an evidentiary hearing."  United States

v. Prater, 2005 WL 2715401, *5 (M.D. Fla.) (unpublished opinion) (citing United States

v. McGee, 714 F.2d 607, 613 (6th Cir. 1983)) (other citations omitted).

### B.    Chase and Citibank's Motions for Summary Judgment

### 1.      Chase and Citibank's Cardholder Agreements

A threshold issue is the enforceability of the agreements between Chase and

Citibank and their respective cardholders.   Chase and Citibank's credit card

agreements, which contain arbitration provisions, constitute valid and enforceable

contracts and are not void as contracts of adhesion.  Under the Federal Arbitration Act

("FAA"), arbitration agreements are "valid, irrevocable, and enforceable, save upon

such grounds as exist at law or in equity for the revocation of the contract."  9 U.S.C.

§ 2; Caley v. Gulfstream Aerospace Corp., 428 F.3d 1359, 1367 (11th Cir. 2005).

9

State law generally governs whether an enforceable contract or agreement to arbitrate exists. <u>Caley</u>, 428 F.3d at 1367 (citations omitted). "Thus, in determining whether a binding agreement arose between the parties, courts apply the contract law of the particular state that governs the formation of contracts."[6] <u>Id.</u>

The Citibank Card Agreement contains a choice of law provision which provides that the agreement is governed by federal law and the law of South Dakota. (Doc. 67, Barnette Supp. Aff., Ex. A, at p. 14). NAC argues that the arbitration provision of Citibank's cardmember agreement is unenforceable as a contract of adhesion because the cardholder did not agree to an amended arbitration provision in the agreement.[7] Under South Dakota law, "a credit card issuer may change the terms of any credit card agreement," (S.D. Codified Laws § 54-11-10), and "if the arbitration agreement provides a method of appointment of arbitrators, this method shall be followed." S.D. Codified Laws § 21-25A-9. The statute further provides that "the following changes to the credit card agreement...do not become binding on the parties if the card holder, within twenty five days of the effective date of the change, furnishes

---

[6] While the law of the state that governs the formation of the cardholder agreements (Citibank - South Dakota; Chase - Delaware) governs the enforceability of the arbitration provisions in those agreements, Florida law applies to the underlying torts alleged in this case.

[7] Citibank sent an amended arbitration agreement to its customers along with their billing statement. (Doc. 67, Barnette Supp. Aff., Ex. A).

written notice...that the card holder does not agree to abide by such changes." S.D. Codified Laws § 54-11-10.

Chase is incorporated under the laws of the state of Delaware.  Chase's cardholder agreement also includes a choice of law provision that any disputes are governed by federal law and Delaware law.  (Chase Doc. 40-7, Ex. F at p. 5).  Chase also sent a notice of an amended arbitration provision to its cardholders and gave them the option of refusing to accept the new agreement.  (<u>Id.</u> at Ex. A).  NAC lodges the same argument as before, i.e. that the amended provision creates a contract of adhesion.  However, "[a]s a general rule, Delaware law permits credit card agreements to be unilaterally amended...." <u>Edelist v. MBNA America Bank</u>, 790 A.2d 1249, 1251 (Del. Supr. 2001) (arbitration provision, which was part of an amendment sent out to the cardholders, properly altered the original agreements).  "A bank may at any time...amend such agreement in any respect, whether or not the amendment...was originally contemplated or addressed by the parties...[including] arbitration or other alternative dispute resolution mechanisms."  5 Del. C. § 952(a). There being no evidence to the contrary, the arbitration provisions in the Citibank and Chase cardholder agreements are enforceable and Chase and Citibank have valid contractual relationships with their respective cardholders.

11

### 2.    Defendants' Sham Arbitrations

It is clear that NAC and Morgan's arbitration "procedure" and "awards" constitute nothing more than a sham.   Nowhere is NAC listed as an acceptable arbitration entity for either Chase or Citibank.   An arbitration award issued by an arbitrator not properly selected by the parties is a nullity.   Austin v. Stovall, 475 So. 2d 1014, 1015 (Fla. 3d DCA 1985). In fact, even when a party is correct that an arbitration provision is invalid or the parties otherwise fail to agree on an arbitrator, both federal and Florida law provide a mechanism for obtaining an arbitrator. Specifically, Fla. Stat. § 682.04 provides:

> If an agreement or provision for arbitration subject to this law provides a method for the appointment of arbitrators or an umpire, this method shall be followed.  In the absence thereof, or if the agreed method fails or for any reason cannot be followed,...the court, on application of a party to such agreement or provision shall appoint one or more arbitrators or an umpire.  An arbitrator or umpire shall have like powers as if named or provided for in the agreement or provision.

The FAA contains a similar provision regarding the appointment of an alternative arbitrator.  See 9 U.S.C. § 5.

Though NAC and Morgan's response to Chase and Citibank's motions for summary judgment illustrates their immense distaste for the credit card industry in the United States (in essence, blaming it for various and sundry financial ills which have

12

plagued this country throughout history), that ill will does not provide a license for NAC and Morgan to solicit Chase and Citibank cardholders and then dupe them into believing their debts have been expunged via a summary arbitration "proceeding" that is nowhere authorized in any agreement between those entities and their customers (or even contemplated under applicable law if the agreed upon arbitration process somehow breaks down).   Nowhere does the law allow a party such as NAC to conduct unilateral arbitrations without the participation of Chase and Citibank and summarily enter "awards" against them.   While NAC and Morgan raise several arguments as to why they are entitled to do this, the Court finds them spurious and baseless.   Consequently, NAC lacked the authority to arbitrate disputes between Citibank or Chase and their respective cardholders.

### 3.   Intentional Interference with Contractual Relationship

Chase and Citibank are entitled to summary judgment on their claims for tortious interference with contractual relationships.   There is certainly a contractual relationship between Chase and Citibank and their respective cardholders and the following excerpt from Morgan's deposition testimony illustrates that NAC and Morgan knew of the contractual relationships:

> Q:     ... Well, you're aware of Citibank, you physically have copies of the Citibank arbitration agreement, you know the standard Citibank

arbitration agreement, what it says, correct, you have a copy of it?

A:     I have one copy, sir.

Q:     You know that you are not listed, NAC is not listed on the Citibank agreement, correct?

A:     NAC is not listed, correct.

(Doc. 30-4; Morgan Dep. at p. 57).

Further, NAC intentionally and unjustifiably interfered with the contractual relationships between Chase and Citibank, and their respective cardholders. Although neither Chase nor Citibank agreed to allow NAC to arbitrate disputes, Morgan nevertheless induced cardholders to arbitrate their disputes with NAC. (Doc. 41-2, Szlezak Aff. at ¶ 14; Doc. 30-6, Morgan dep. at p. 126).  Morgan's own deposition supports this:

Q:     ... Sir, is it your understanding that you have a right when you know Citibank refuses to use you as an arbitration service and the cardholder wants to use you as an arbitration service, it's your position you still have a right to litigate the claim and arbitrate the claim?

A:     Yes, I believe that's correct.

14

(Doc. 30-4; Morgan dep. at pp. 57-58).[8]

NAC and Morgan's interference with the contractual relationship between Chase and Citibank and their cardholders has resulted in damages to the plaintiffs. Citibank includes in the Barnette Affidavit three examples of arbitration "awards" issued by NAC. (Doc. 2, Barnette Aff. at pp. 6-16). To date, NAC has issued over 278 "awards" against Citibank and over 262 "awards" against Chase. Once the unauthorized "awards" are entered, cardholders take the position that their debt to Chase and Citibank has been expunged, thus relieving them from their contractual payment obligations. This causes Chase and Citibank to initiate collection proceedings against the cardholders and to spend money collecting debts that should have otherwise been undisputed. Chase and Citibank have likewise been forced to spend money opposing cardholders seeking to have their arbitration "awards"

---

[8] NAC's argument that they are authorized to interfere with the cardholder agreements because they are a third party intended beneficiary and in privity of contract is unavailing. (Doc. 78, at p. 8). Under Florida law "a third party is an intended beneficiary of a contract between two other parties only if a direct and primary object of the contracting parties was to confer a benefit on the third party." Bochese v. Town of Ponce Inlet, 405 F.3d 964, 982 (11th Cir. 2005). Further, "it is not sufficient to show only that one of the contracting parties unilaterally intended some benefit to the third party." Id. at 983 (quoting Morgan Stanley DW, Inc. v. Halliday, 873 So.2d 400, 403 (Fla. 4th DCA 2004)). Until it injected itself into the contractual relationship between Chase and Citibank and its cardholders, NAC had no connection with Chase and Citibank or its cardholders.

15

confirmed by a court. Though Chase and Citibank have incurred some level of damages, the summary judgment record is insufficient to decipher an appropriate amount.

### 4.   Deceptive and Unfair Trade Practices

Chase and Citibank also assert that NAC and Morgan engaged in deceptive and unfair conduct under FDUTPA. The same undisputed facts that support Chase and Citibank's claim for tortious interference likewise support their FDUTPA claims.

### 5.   Permanent Injunctive Relief - FDUTPA

FDUTPA provides that "anyone aggrieved by a violation of this part may bring an action to obtain a declaratory judgment...and to enjoin a person who has violated, is violating, or is otherwise likely to violate this part." Fla. Stat. § 501.211(1) (2006); Marco Island Cable, Inc. v. Comcast Cablevision of the South, Inc., 2006 WL 1814333, *6 (M.D. Fla.)) (unpublished opinion) (a corporation may bring a claim for injunctive and declaratory relief under FDUTPA). Based on the undisputed facts set forth above, Chase and Citibank have proven the additional element needed to obtain a permanent injunction, i.e. they have prevailed on the merits of the FDUTPA claim. See Alabama, 424 F.3d at 1128. There still being no adequate remedy at law for the defendants' potential future violations and because irreparable harm will result for

16

Chase and Citibank unless defendants are enjoined, defendants are permanently enjoined as set forth below.[9]

### 6.    Attorneys' Fees Under FDUTPA - Fla. Stat. § 501.2105

Fla. Stat. § 501.2105 provides for a discretionary award of attorneys' fees to a prevailing party in any litigation under FDUTPA.  That statute provides, in pertinent part:

(1)    In any civil litigation resulting from an act or practice involving a violation of this part, except as provided in subsection (5), the prevailing party, after judgment in the trial court and exhaustion of all appeals, if any, may receive his or her attorney's fees and costs from the nonprevailing party.

(4)    Any award of attorney's fees or costs shall become a part of the judgment and subject to execution as the law allows.

Fla. Stat. § 501.2105.  Prior to 1994, the prevailing party in a FDUTPA claim was mandatorily entitled to attorneys' fees and costs from the nonprevailing party.  After the 1994 amendment, an award of such fees and costs is now in the discretion of the trial court.  See JES Properties, Inc. v. USA Equestrian, Inc., 432 F. Supp. 2d 1283,

---

[9]    While the Court also holds that plaintiffs have prevailed on their tortious interference with contractual relationships claim, the remedy afforded under that claim (damages) is inadequate in the context of this case.  Not only is the true amount of damages sustained difficult to discern, that remedy offers no practical recourse from any future violations by NAC and Morgan.

17

1291 n. 13 (M.D. Fla. 2006) (citing Hubbel v. Aetna Cas. & Sur. Co., 758 So. 2d 94, 101 n. 10 (Fla. 2000) (Lewis, J., concurring in part and dissenting in part).  While Chase and Citibank have prevailed on their FDUTPA claims, the undersigned finds that the language of § 501.2105(1) (i.e., that the prevailing party is entitled to attorneys fees and costs "after judgment in the trial court and exhaustion of all appeals, if any") (emphasis added) requires the denial without prejudice of Chase and Citibank's application for attorneys' fees and costs, subject to renewal after either the expiration of NAC and Morgan's time to appeal or the conclusion of an appeal.  See M.G.B. Homes, Inc. v. Ameron Homes, Inc., 30 F.3d 113, 115 (11th Cir. 1994) (Fla. Stat. § 501.2105 "expressly includes the culmination of the appellate process in its definition of a prevailing party" for purposes of awarding attorneys' fees and costs); see also Fed. R. App. P. 4(a)(1)(A).

### C.    Defendants' Motion to Dismiss

The only portion of NAC and Morgan's motion to dismiss that merits any discussion is the contention that Morgan is not liable to Chase and Citibank because his acts were performed in his capacity as the sole proprietor of NAC, and not in his personal capacity.  This argument is unavailing.  Under Florida law, an officer or agent of a corporation may be individually liable in tort if he commits or participates in the tort, even if his acts are within the course and scope of his employment, provided that

18

he is directly involved in the tortious acts and did not merely perform some administrative or ministerial function for the entity.  See White v. Wal-Mart Stores, Inc., 918 So. 2d 357, 358 (Fla. 1st DCA 2005) (citations omitted); State, Office of Atty. Gen., Dept. of Legal Affairs v. Wyndham Int'l, Inc., 869 So. 2d 592, 599 (Fla. 1st DCA 2004) (an individual corporate officer may not avail him or herself of the corporate shield and may be held liable under FDUTPA provided that he or she was a primary participant in the deceptive and unfair trade practice).  Here, Morgan (the tortfeasor) was the sole officer and director of NAC and its only arbitrator.  Thus, Morgan cannot escape liability via the corporate shield.

Accordingly, it is hereby **ORDERED:**

1.      Citibank N.A. and Citibank USA, National Association's Amended Motion for Summary Judgment (Doc. 71) is **GRANTED**.

2.      Chase Manhattan Bank USA, N.A.'s Motion for Partial Summary Judgment (Doc. 70) is **GRANTED**.

3.      Defendants National Arbitration Council, Inc. and Charles S. Morgan's Motion to Dismiss (Doc. 73) is **DENIED**.

4.      Defendants National Arbitration Council, Inc. and Charles S. Morgan, and any officers, agents, servants, employees, representatives, successors, and assigns,

and all other persons, firms or corporations acting in concert, privity or participation with them, are hereby **PERMANENTLY ENJOINED AND RESTRAINED** from:

a.      directly or indirectly accepting or referring any arbitration demands relating to or arising from any cardholder accounts of Citibank or Chase, or their current and former affiliates,

b.      directly or indirectly conducting any arbitration proceedings involving Citibank or Chase, or their current and former affiliates,

c.      directly or indirectly issuing any arbitration award involving Citibank or Chase, or their current and former affiliates,

d.      directly or indirectly interfering in any way with any contractual relationship between Citibank or Chase, their current and former affiliates, and their current, former and future cardholders, and

e.      accepting any money from cardholders of Citibank or Chase or their current and former affiliates for arbitrations services in connection with the cardholders' accounts.

f.      Further, this Court declares that all arbitration proceedings and any arbitration "awards" issued by NAC and Morgan and their affiliates that involved Chase and Citibank are null and void and have no legal force or effect.

4.      Chase and Citibank's summary judgment motions leave only the issue of the amount of damages to be heard.  Based on the issuance of the permanent injunction and declaration, the Court questions the need to proceed to an evidentiary hearing on damages due to the potential difficulty in quantifying those damages. Chase and Citibank must inform the Court whether they intend to pursue damages by **Friday, October 6, 2006**.  If so, the Court will schedule proceedings; if not, the Court will then enter a judgment in favor of Chase and Citibank consistent with this opinion.

5.      The Court retains jurisdiction to entertain a motion for attorneys' fees and costs, as detailed in the Court's opinion.

**DONE AND ORDERED** at Jacksonville, Florida this <u>19th</u> day of September, 2006.

TIMOTHY J. CORRIGAN
United States District Judge

t.
Copies: counsel of record

21